IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>DANIEL APONTE, and<br>DAGOBERTO VEGA,<br><br>               Defendants. | CASE NO.  8:12CR352<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 44)[1] issued by Magistrate Judge F.A. Gossett recommending that the Motions to Suppress (Filing Nos. 28, 30) filed by the Defendants, Daniel Aponte ("Aponte") and Dagoberto Vega ("Vega"), respectively, and the Amended Motion to Suppress (Filing No. 38) filed by Aponte, be denied.  Defendant Aponte filed an objection to the Findings and Recommendation along with a supporting brief (Filing Nos. 51, 50) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).  The United States also filed an objection (Filing No. 50).

## BACKGROUND

Both Defendants were charged in a one-count Indictment with possession with intent to distribute one (1) kilogram or more of a mixture and substance containing heroin, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. § 841(a)(1), and conspiracy in violation of 21 U.S.C. § 846.  Defendants seek suppression of evidence and statements obtained as a result of their October 1, 2012, traffic stop.  At the evidentiary hearing, upon the request of Assistant United States Attorney Robert Sigler, Judge Gossett took judicial notice of Nebraska Revised Statute § 60-399, and of

---

[1]Judge Gossett's findings of fact and conclusions of law were made orally.  The evidentiary hearing was held on January 29, 2013, and the transcript appears at Filing No. 49.  Judge Gossett's findings of fact and conclusions of law appear at pages 117-129 of Filing No. 49.

Florida Statutes §§ 316.605 and 320.061.  (Filing No. 49 at 9.)  Upon the request of Michael Nelson, counsel for Defendant Aponte, Judge Gossett took judicial notice of Nebraska Revised Statute § 60-367.

In Judge Gossett's oral findings of fact, he provided an account of the events surrounding the stop, consent, and search.  (Filing No. 49 at 117-123.)  The Court has considered the transcripts of the hearing conducted by Judge Gossett and carefully viewed the evidence, including the DVD of the stop.  There are no objections to Judge Gossett's factual findings, and based on a de novo review of the record the Court adopts those factual findings.   The Court provides the following facts by way of summary:

On October 1, 2012, OPD Officer Randy Pignotti of the Omaha Police Department stopped a vehicle for driving with a partially obstructed rear license plate, allegedly in violation of Neb. Rev. Stat. § 60-399.   The driver of the vehicle was identified as the Defendant, Daniel Aponte. The lone passenger in the vehicle was the co-defendant, Dagoberto Vega.   After the stop, Officer Pignotti brought Defendant Aponte to his cruiser and Defendant Vega remained in the vehicle.   Officer Pignotti questioned Aponte and Vega separately about their travel plans and travel history.   Officer Pignotti also collected documentation and vehicle information.   The government claims that both the Defendant and the co-Defendant consented to a search of the car approximately 32 minutes after the stop, leading to the discovery of approximately one kilogram of heroin.

Following a hearing on the Defendants' Motions to Suppress, Judge Gossett concluded that Officer Pignotti made a valid stop of the vehicle because of the partially

obstructed rear license plate, allegedly in violation of Neb. Rev. Stat. § 60-399.  (Filing No. 49 at 123.)   Judge Gossett found, however, that Officer Pignotti did not have reasonable suspicion to extend the stop beyond a routine investigative detention.  (*Id.* at 124-5.)   Judge Gossett considered the totality of Officer Pignotti's stated reasons for suspicion, but concluded that they did not support a reasonable belief that the Defendants were trafficking contraband.  (*Id.* at 124.)

Though Judge Gossett concluded that Officer Pignotti did not have cause to extend the stop based on suspected criminal activity, he did not recommend that the Motions to Suppress be granted.  Rather, Judge Gossett found that the routine traffic stop investigation was not complete until 31 minutes and 30 seconds into the stop.  (*Id.* at 126.)   Judge Gossett reasoned that there was no evidence that Officer Pignotti prolonged the period of gathering routine traffic stop information for purposes of extending the stop.  (*Id.*)  Judge Gossett noted that Officer Pignotti encountered several unusual circumstances with regard to the vehicle's registration, origin, and ownership, and investigated these issues until 29 minutes had passed after the initial stop.  (*Id.* at 125-7.)  Judge Gossett explained that a detention of half an hour was reasonable where the Defendants were unable to produce required documentation, and the vehicle was registered in one location, but owned in another. (*Id.* at 127.)   Judge Gossett also concluded that, even if the routine traffic stop investigation was complete between 16 and 20 minutes into the stop, the Defendants freely, voluntarily, knowingly, and intelligently consented to a search of the vehicle, thus eliminating any inference of a constitutional violation.  (*Id.* at 126, 127.)   Accordingly, Judge Gossett concluded that

the Defendants' consent eliminated any question of an infringement of their constitutional rights, even if the original stop was unreasonably prolonged.  (*Id*. at 128.)

### STANDARD

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the Findings and Recommendation to which the Defendant has objected.  The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations.  The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

### DISCUSSION

Defendant Vega has not filed an objection to Judge Gossett's Findings and Recommendation.  Defendant Aponte objects to the following conclusions made by Judge Gossett:  (1) the routine traffic stop investigation was not completed until 31 minutes and 30 seconds, and there is no evidence that Officer Pignotti extended the routine investigation for the purpose of extending the stop; (2) the length of the detention was not unduly long and fell within the heartland of stops in these matters; and (3) the Defendants' consents were given freely, voluntarily, knowingly, and intelligently, thus purging the taint of any portion of the stop being illegal.  The United States objects to Judge Gossett's statement that Officer Pignotti lacked reasonable articulable suspicion to prolong the traffic stop.  The United States requests that the Court not adopt the finding that Officer Pignotti lacked reasonable articulable suspicion. For the reasons discussed below, the Court will adopt the Findings and Recommendation of Judge Gossett and overrule the parties' objections.

**1.      Duration of Investigative Detention**

Aponte objects to Judge Gossett's finding that the length of the investigative detention was reasonable under the circumstances.  The reasonableness of the length of a traffic stop and its resulting detention are fact-based questions, and a traffic stop is not subject to a defined limit.  *United States v. Riley,* 684 F.3d 758, 765 (8th Cir. 2012) *cert. denied,* 133 S. Ct. 800 (2012). "The occupants of a vehicle may be detained while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Bracamontes,* 614 F.3d 813, 816 (8th Cir. 2010) (citation omitted).  "At a minimum, a reasonable investigation can include 'asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose.'"  *United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) *cert. denied,* 133 S. Ct. 387 (2012).  To be clear, "[a]n officer may also question a vehicle's passengers to verify information provided by the driver, and conflicting stories may provide justification to expand the scope of the stop and detain the occupants." *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (citations omitted).  An investigative detention must be temporary, lasting no longer than necessary to effectuate the purposes of the traffic stop.  *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005).  An investigative detention turns into an arrest when it lasts for an unreasonably long time or if law enforcement officers use unreasonable force.  *Id.* (citing *United States v. Navarrete-Barron,* 192 F.3d 786, 790 (8th Cir.1999)).

Judge Gossett concluded that Officer Pignotti did not have reasonable articulable suspicion to detain the Defendants based on criminal activity, but determined that Officer Pignotti's routine investigative tasks were not completed until 31 minutes and 30 seconds into the traffic stop.  Aponte argues that Officer Pignotti's investigative detention was unreasonably long because Officer Pignotti decided he had reasonable suspicion to prolong the stop after 20 minutes, and did not ask for consent to search until another 10-14 minutes had passed.  Stated another way, Aponte does not object to the length of the detention per se, but argues that the purposes of Officer Pignotti's traffic stop were completed at least 10 minutes before the courtesy citation was issued and consent to search was given.  (Filing No. 52 at 2.)

The Court agrees with Judge Gossett that the routine investigation was prolonged, if at all, by complications regarding the vehicle and its documentation, and not by any suspicion of illegal activity.  When complications arise in carrying out the traffic-related purposes of a stop, law enforcement may reasonably detain a driver for a longer period than when a stop is strictly routine.  *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (citing *United States v. Sharpe*, 470 U.S. 675, 685–87 (1985)).  For example, in *Olivera-Mendez*, the defendant argued that a law enforcement officer's desire to conduct a canine sniff of the vehicle extended a traffic stop beyond the period reasonably necessary to complete it.  *Id.* at 509-10. The Eighth Circuit concluded that the detention was not unreasonable because several circumstances caused the law enforcement officer's stop to take longer than a usual routine traffic stop. *Id.* at 510.  The information presented to law enforcement created several problems: the car was registered in one state, but licensed in a second; the vehicle's license plate

6

and the defendant's license were from different states, and were both temporary; and the owner's certificate appeared to be photocopied and incomplete, and listed someone else as the owner. *Id*. The already time-consuming tasks of a traffic stop took longer than normal because the defendant presented unusual circumstances and incomplete documentation. *Id*.

Similarly, in *United States v. Sanchez*, the majority of a nearly 45 minute encounter was spent completing the routine purpose of the initial traffic stop. 417 F.3d at 975. The defendant in *Sanchez* had been evasive about his identity, necessitating multiple computer checks to complete the officer's legitimate investigation. *Id*. The Eighth Circuit concluded that detaining the vehicle's occupants for 45 minutes following a traffic stop did not constitute a de facto arrest because the length of the detention was reasonable. *Id*. The Eighth Circuit reasoned that the officers spent most of the stop completing the routine traffic investigation, including trying to confirm identity of the passenger who had provided suspect identification. *Id*. The officers acted diligently to minimize the detention period, and employed the least intrusive means of detention and investigation. *Id*.

The video of the stop and Officer Pignotti's testimony at the hearing establish that several complications arose in the course of the routine traffic investigation. At Officer Pignotti's initial approach to the vehicle, Defendants were unable to produce the required documentation. While Defendant Vega searched for the documentation in the vehicle, Officer Pignotti took Defendant Aponte to his cruiser to review Aponte's personal information and run an initial data check. Officer Pignotti's initial data check revealed that Aponte's license contained the mark "DM". Both Pignotti and dispatch

7

were unfamiliar with the mark, and verifying its meaning took several minutes.   The record also shows that during this time Aponte initiated multiple casual conversations with Officer Pignotti about working in law enforcement and other matters.   At about 10 minutes into the stop, Pignotti returned to the vehicle to speak with Defendant Vega and obtain vehicle information.   Vega delivered a registration document for the dealer license plate belonging to a dealership in Florida, but the information was not specific to the vehicle.   Vega also produced insurance information for the Florida dealership without information specific to the vehicle.   Vega finally produced a title for the vehicle issued from New York that contained information specific to the vehicle.   Officer Pignotti confirmed the title with the VIN plate on the vehicle, and returned to the cruiser where Aponte was still seated in the passenger seat.   Officer Pignotti and Aponte discussed the issues with the registration and title, and ran further checks on the vehicle.   The record shows that as late as 27 to 29 minutes into the stop, Officer Pignotti continued to discuss the registration and title issues with the Defendants.

Officer Pignotti's initial investigation was not unreasonable under the circumstances.   Although Pignotti believed he had reasonable suspicion to prolong the stop, there is no evidence that he extended the duration of the stop on that basis. Officer Pignotti did not deploy the drug dog, and his conversations with the Defendants related solely to the routine traffic investigation.   Though Aponte claims that Officer Pignotti's investigation concluded 16-20 minutes into the stop, the record and DVD show that up until 27-29 minutes had passed, Pignotti asked only for documentation and inquired about the Defendants' destination, route and purpose.   *See cf. United Sanchez*, 417 F.3d at 975; *United States v. Munroe,* 143 F.3d 1113, 1116 (8th Cir.

8

1998).  The Court agrees that Officer Pignotti diligently pursued his investigation, and any delay caused by the multiple computer checks and repeated questioning of the Defendants was related to Pignotti's reasonable investigation of the title and registration issues.   Pignotti also asked the Defendants about potential inconsistencies in their accounts of their travel history.   Regardless of whether these inconsistencies justified Officer Pignotti's suspicion, he was permitted to question the Defendants on these inconsistencies as part of his routine traffic investigation.   *Barragan*, 379 F.3d at 529. Not until Pignotti resolved these issues did he seek the Defendants' consent to search the vehicle for contraband or question the Defendants about further criminal activity. Accordingly, the Court adopts Judge Gossett's finding that the Defendants' investigative detention was not unduly long.

## 2.   Reasonable Suspicion

Judge Gossett found that Officer Pignotti did not have reasonable articulable suspicion sufficient to prolong the traffic stop beyond the time necessary to complete his routine traffic investigation.   The government objects to this finding, arguing that the evidence shows Pignotti had reasonable suspicion to prolong the stop.   The government requests that the Court specifically refrain from adopting this portion of Judge Gossett's finding.   Because the Court finds that the investigative stop was not unreasonably long, it need not address whether Officer Pignotti had reasonable suspicion to prolong the stop.

## 3.   Voluntariness of the Waiver

Defendant Aponte argues that consent to search the vehicle was not freely or voluntarily given.   Even if the traffic investigation was unreasonably long, "any evidence

9

discovered in it thereafter is nevertheless admissible if [the Defendants'] consent to the search was 'sufficiently an act of free will to purge the primary taint.'" *United States v. Palacios-Suarez*, 149 F.3d 770, 772 (8th Cir. 1998) (quoting *United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir.1994)).   "Consent is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker,' rather than the 'product of duress or coercion, express or implied.'" *United States v. Cisneros–Gutierrez,* 598 F.3d 997, 1003 (8th Cir.2010) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)).   Whether consent is voluntary is "a question of fact to be determined by the totality of the circumstances." *Id.* In evaluating the environment in which consent was given, relevant factors include:

> (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently ... as the search occurred.

*United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005) (quoting *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001)).   "The precise question is not whether [someone] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

None of these factors suggests that the investigative detention was sufficiently coercive to render either Defendants' consent involuntary.   At the time Aponte gave his consent, Officer Pignotti had already informed him that he was free to leave.   Although Pignotti testified that Defendants were not free to leave, there is no evidence that Aponte believed he was being lied to, or that Officer Pignotti physically threatened

Aponte, or made any promises or misrepresentations to him.   Throughout the investigatory detention, Officer Pignotti was cordial with both Defendants, and Aponte was friendly and engaging with Officer Pignotti.  Pignotti's tone in making the request was conversational, and Aponte made no effort to stop or limit the search.  Aponte was not under arrest when he gave consent, and Aponte's tone was cooperative, giving answers without hesitation.  The totality of the circumstances, including Officer Pignotti's and Aponte's behavior, demonstrate that the consent was voluntary.  *See United States v. $231,930.00 in U.S. Currency*, 614 F.3d 837, 845 (8th Cir. 2010).  The presence of the barking dog and the fact that Aponte was not advised that he could refuse the search are not sufficient to overcome the other facts that show his consent was voluntary.  Accordingly, considering the totality of the circumstances, Defendants consented to the search of their vehicle after a valid traffic stop.  Accordingly,

IT IS ORDERED:

1.   The Magistrate Judge's Findings and Recommendation (Filing No. 44) is adopted in its entirety;

2.   Defendant Aponte's objections to the Findings and Recommendation (Filing Nos. 51) are overruled;

3.   The Government's objection to the Findings and Recommendation (Filing No. 50) is overruled as moot; and

4.   The Defendants' motions to suppress (Filing Nos. 28, 30, 38) are denied.

Dated this 12th day of March, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Jud

11